IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


TERRENCE L. JESSIE,                          3:10-CV-1076-BR

          Plaintiff,

                                             OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center, Suite 130
Portland, OR 97223
(503) 245-6309

NANCY J. MESEROW
Columbia Business Center
9900 S.W. Greenburg Road, Suite 130
Portland, OR 97223
(503) 245-6309

          Attorneys for Plaintiff


1   -   OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN ANN MILLER**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2240

        Attorneys for Defendant

**BROWN, Judge.**

        Plaintiff Terrence L. Jessie seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which the ALJ denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

        Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

### ADMINISTRATIVE HISTORY

        Plaintiff filed his protective application for SSI on

January 26, 2004.  Tr. 58.[1]  His application was denied initially and on reconsideration.  Tr. 45-47, 51-54.  An Administrative Law Judge (ALJ) held a hearing on September 13, 2006.  Tr. 19.[2]  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a Vocational Expert (VE) testified at the hearing.

The ALJ issued an opinion on October 18, 2006, and found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 19-27.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 4, 2007.  Tr. 5-7.

On June 19, 2007, Plaintiff filed a complaint in this Court (No. 07-CV-900-CL) challenging the Commissioner's decision.

On April 22, 2008, Plaintiff filed a subsequent claim for SSI benefits.  Tr. 372.

On September 18, 2008, Magistrate Judge Mark D. Clarke issued Findings and Recommendation in which he recommended the Court reverse the Commissioner's decision to deny Plaintiff's application for SSI benefits and remand for further proceedings

---

[1] Citations to the official transcript of record filed by the Commissioner on January 26, 2011, are referred to as "Tr."

[2] The administrative record filed in this case does not contain a transcript of the original hearing held on September 13, 2006.  Plaintiff included an uncertified copy of the transcript of that proceeding with his Reply (#15).  The Court, however, has verified the accuracy of the hearing transcript by reviewing the administrative record that the Commissioner submitted in the underlying action before remand in the District Court of Oregon, 07-CV-900-CL.

3   -   OPINION AND ORDER

to consider new evidence.  Tr. 336-69.  The Findings and
Recommendation were adopted by Judge Owen M. Panner on November
28, 2008.  Tr. 334-35.  On December 16, 2008, the Appeals Council
vacated the final decision of the Commissioner, associated
Plaintiff's two claims for SSI benefits, and directed the ALJ to
issue a new decision on the associated claims.  Tr. 372.  In
addition, the Appeals Council directed the ALJ to provide
Plaintiff with the opportunity to have a hearing and to take any
action necessary to complete the administrative record.  Tr. 372.

On January 9, 2009, Plaintiff appealed to the Ninth Circuit
Court of Appeals the Court's November 28, 2008, decision to
remand the matter for further administrative proceedings.  On
December 30, 2009, the Ninth Circuit affirmed in part and
reversed in part (#16) the Court's Opinion and Order issued
November 28, 2008.  In accordance with the Ninth Circuit's
decision, Judge Panner remanded the matter to the Commissioner on
March 25, 2010, for further administrative proceedings to

> consider the evidence provided by Dr. Olbrich
> and reconsider the lay testimony.  In
> addition, the ALJ may reconsider plaintiffs
> residual functional capacity and his symptom
> testimony in light of the consideration of
> Dr. Olbrich's report as well as the lay
> witness testimony.

An ALJ held a second hearing on April 14, 2010.  Tr. 453.
At the hearing, Plaintiff was represented by an attorney.
Tr. 453.  Plaintiff, lay-witness Rhonda Esser, and a VE testified

4  -  OPINION AND ORDER

at the hearing.  Tr. 453-96.

The ALJ issued an opinion on June 18, 2010, and found
Plaintiff is not disabled and, therefore, is not entitled to
benefits.  Tr. 319-29.  That decision became the final decision
of the Commissioner when the Appeals Council failed to review the
ALJ's decision.  Tr. 316-18.

On August 24, 2010, Plaintiff filed his Complaint in this
Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was fifty-one years old at the time of the second
hearing before the ALJ.  Tr. 459.  Plaintiff completed his
education through the eleventh grade.  Tr. 459.  He has performed
past work as a cook, warehouse worker, and maintenance worker at
a convalescent home.  Tr. 490.  Plaintiff alleges a disability
onset date of November 11, 1999.  Tr. 59.

Plaintiff has been diagnosed with type II diabetes, diabetic
peripheral neuropathy, degenerative disc disease of the cervical
and lumbar spine, chronic low-back pain due to bulging discs at
the L4-S1 level, hypertension, post-polio syndrome,
gastroesophageal reflux disease, and osteoarthritis.  Tr. 396,
402, 406-07, 428, 441, 444, 451.

Plaintiff alleges he is disabled due to pain in his hands,
arms, neck, lower back, and legs; limitations on his ability to

5  -  OPINION AND ORDER

sit, stand, and walk; limitations on his ability to maintain concentration, persistence, and pace; and limitations on his ability to lift and to carry.  Tr. 66-67, 87-88, 460-66.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 323-27.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial

6   -   OPINION AND ORDER

evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whethis it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I. **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.920. Each step is potentially dispositive.

7   -  OPINION AND ORDER

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.920(a)(4).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.920(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other

8   -   OPINION AND ORDER

words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R.

§ 404.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 26, 2004, the date of Plaintiff's initial application.    Tr. 321.

At Step Two, the ALJ found Plaintiff has the severe impairments of "degenerative disc disease in the lumbar and cervical spine, diabetes mellitus with numbness in the feet bilaterally, ACL repair to the left knee, and pin in the left ankle due to polio complications."    Tr. 321.

At Step Three, the ALJ concluded Plaintiff's physical and mental impairments do not singly or in combination meet or equal a Listed Impairment.    *See* 20 C.F.R. part 404, subpart P, appendix 1.    The ALJ found Plaintiff had the RFC to

> perform light work as defined in 20 C.F.R.
> 416.967(b).    He can read, write, use numbers,
> and perform simple calculations.    He should
> never climb ladders, ropes, or scaffolds, but
> can occasionally climb ramps or stairs.    He
> can occasionally balance, stoop, kneel,
> crouch, and crawl.    He can occasionally use
> foot pedals.    He needs to alternate sitting
> and standing at will approximately every
> forty-five minutes.    He should avoid
> concentrated exposure to hazards, extreme
> cold, and vibration.    He can understand,
> remember, and carryout short, simple
> instructions and perform routine tasks.

Tr. 323.

At Step Four, the ALJ concluded Plaintiff is unable to

10  -  OPINION AND ORDER

perform any of his past relevant work.  Tr. 23.

At Step Five, the ALJ concluded Plaintiff has a sufficient RFC to perform jobs that exist in significant numbers in the national economy.  Tr. 328-29.  Specifically, the ALJ found Plaintiff has the ability to perform jobs that require light work such as parking-lot cashier and paper sorter/recycler.  Tr. 328.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly discrediting the opinion of Gary Olbrich, M.D., Plaintiff's treating physician; (2) improperly discrediting Plaintiff's subjective symptom testimony; (3) improperly discrediting the testimony of lay-witness Rhonda Esser; (4) failing to include Plaintiff's leg-length discrepancy as a severe impairment at Step Two; (5) failing to find Plaintiff's impairments meet or exceed a Listed Impairment; (6) failing to fully develop the record as to Plaintiff's depression and anxiety; (7) failing to include Plaintiff's limitations on concentration, persistence, and pace in Plaintiff's RFC; and (8) failing to meet his burden at Step Five to show Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy.

As an initial matter, the Commissioner maintains the law of the case prohibits relitigation of a number of these issues because the original decision by the ALJ issued on October 18,

2006, was upheld in part by Judge Panner in the underlying action, and the Ninth Circuit did not overturn the ALJ's decision in its entirety.  Thus, the Commissioner argues several of Plaintiff's asserted grounds for error are not properly before this Court.

Plaintiff, however, points out that the ALJ did not limit the April 14, 2010, hearing or his June 18, 2010, decision to specific issues but instead addressed the same issues as the ALJ reached in his October 18, 2006, decision even though Plaintiff contends he should have limited review of the evidence and his decision to only those issues set out in the Ninth Circuit remand.

As reflected in Judge Panner's Order remanding the matter to the Commissioner for further proceedings, the Ninth Circuit affirmed the District Court's decision to reverse the denial of benefits by the Commissioner and to remand for further proceedings to consider the new medical evidence from Dr. Olbrich, Plaintiff's treating physician.  The Ninth Circuit, however, reversed the District Court's determination that the ALJ adequately addressed the lay-witness testimony and directed the ALJ to reconsider that evidence on remand.  Finally, the Ninth Circuit concluded:  "The ALJ properly assessed Jessie's residual functional capacity and did not err in rejecting Jessie's symptom testimony based on the record before him.  However, he may

reconsider these assessments in light of his consideration of Dr. Olbrich's report as well as the lay witness testimony."

Although the Court agrees with Plaintiff that the ALJ revisited Plaintiff's claim in its entirety, the ALJ did not err in doing so.  The Ninth Circuit expressly permitted the ALJ to reconsider the issues of Plaintiff's RFC and credibility to the extent that the records from Dr. Olbrich and the lay-witness testimony bear on those issues.  The records submitted by Dr. Olbrich constitute nearly three years of additional treatment history of Plaintiff's impairments and bear substantively on Plaintiff's claim of disability.  Thus, the ALJ appropriately reconsidered Plaintiff's claim for benefits in its entirety in light of the new evidence from Dr. Olbrich.  Accordingly, the Court will consider each of Plaintiff's asserted bases for error and declines to find any of those issues are necessarily controlled by the law of the case from the underlying action in the District Court of Oregon, case number 07-CV-900-CL.

I.   **The Opinion of Dr. Olbrich.**

Plaintiff contends the ALJ erred by failing to give controlling weight to the opinion of Dr. Olbrich, Plaintiff's treating physician.  Specifically, Plaintiff points to a form that Dr. Olbrich filled out on February 1, 2007, in which he set out Plaintiff's functional capacity and his opinion that Plaintiff has been unable to work since November 2003.  Tr. 309-

13  -  OPINION AND ORDER

15.   Plaintiff contends the ALJ did not provide sufficient
reasons for rejecting Dr. Olbrich's opinion as to Plaintiff's
functional capacity and his conclusion that Plaintiff is
disabled, which Plaintiff asserts should be credited.

**A.   Dr. Olbrich.**

The record reflects Dr. Olbrich was Plaintiff's treating
physician from October 2006 through February 2010 during which
time Dr. Olbrich treated Plaintiff on dozens of occasions.
Tr. 392-432.  Dr. Olbrich diagnosed Plaintiff with degenerative
disc disease of the lumbar and cervical spine, hypertension, type
II diabetes, osteoarthritis, chronic pain, and gastroesophageal
reflux disease.  Tr. 392-95, 402-03, 406.

On February 1, 2007, after having treated Plaintiff on five
occasions, Dr. Olbrich filled out a form in which he stated
Plaintiff had been disabled and unable to work since November
2003.  Tr. 309-15.  Dr. Olbrich opined Plaintiff had degenerative
disc disease of the lumbar spine that causes pain in his lower
back radiating into his lower extremities.  Tr. 309.  Dr. Olbrich
also identified "clinical signs of arthritis" in Plaintiff's
hands.  Tr. 312.  Dr. Olbrich opined Plaintiff's condition would
deteriorate over time.  Tr. 309.

Dr. Olbrich assessed Plaintiff's functional capacity as
follows:  able to stand and walk less than two hours in an eight-
hour day; able to stand for no more than 20 minutes without

changing positions; able to sit for approximately 30 minutes in an eight-hour day and for no more that 15 minutes without changing positions; must change positions from sitting, standing, or walking at will; must lie down three to four times per day; can rarely twist or climb stairs; can never stoop, crouch, or climb ladders; and able to lift less than ten pounds occasionally and ten pounds occasionally.  Tr. 312-13.

Dr. Olbrich concluded Plaintiff's pain frequently interferes with attention and concentration and causes substantial difficulty with fatigue and a lack of stamina that would require him to work at a reduced pace.  Tr. 309-10.

Dr. Olbrich opined Plaintiff is not a malingerer and his symptoms are reasonably consistent with his impairments. Tr. 310.  Dr. Olbrich, however, stated Plaintiff's conditions needed further evaluation.  Tr. 311.

**B.   The ALJ.**

The ALJ gave Dr. Olbrich's assessment of Plaintiff's functional capacity "little weight" based on the following: (1) Plaintiff provided many of the answers to the questionnaire for Dr. Olbrich, and those answers reflect Plaintiff's subjective beliefs rather than any objective testing of Plaintiff's capacity; (2) Dr. Olbrich's assessment is inconsistent with his chart notes; (3) Dr. Olbrich's assessment is inconsistent with other medical evidence in the record; and (4) Plaintiff's

allegations of disabling low-back pain are belied by Plaintiff's repeated requests for Viagra.  Tr. 327.

**C.    Analysis.**

As noted, Plaintiff contends the ALJ erred when he failed to give controlling weight to Dr. Olbrich's opinion and to provide "specific and legitimate" or "clear and convincing" reasons for rejecting Dr. Olbrich's opinion.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.*

16  -  OPINION AND ORDER

at 600.

In addition to the bases provided for discrediting
Dr. Olbrich's assessment, the ALJ cited the opinion of
nonexamining Disability Determination Services (DDS)[3] physician
J. Scott Pritchard, D.O., as inconsistent with Dr. Olbrich's
opinions.  Tr. 244-51.

As noted, the ALJ concluded Plaintiff provided Dr. Olbrich
with the answers to the February 1, 2007, questionnaire assessing
Plaintiff's functional limitations.  Tr. 327.  In fact, Plaintiff
testified at the hearing that he did so.  Tr. 461-62.  Thus,
Dr. Olbrich's opinion was not based on his own assessment of nor
objective testing of Plaintiff's functional capacity.  In
addition, the ALJ, as discussed below, properly discredited
Plaintiff's subjective symptom testimony, which is an appropriate
ground for discrediting a physician's opinion that is based on a
patient's subjective complaints.  *See Morgan v. Comm'r of the
Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999).

The ALJ also noted Dr. Olbrich's chart notes are
inconsistent with his February 1, 2007, assessment of Plaintiff's
functional capacity.  Tr. 327.  Indeed, Dr. Olbrich's treatment
notes over the course of his treating relationship with Plaintiff

---

[3] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a).

reveal that even though Dr. Olbrich found Plaintiff to be credible in the early months of their relationship, Dr. Olbrich grew increasingly skeptical about Plaintiff's veracity and the severity of his symptoms as reflected in the following entries from Dr. Olbrich's treatment notes after his February 1, 2007, assessment of Plaintiff's functional capacity:  a discrepancy between Plaintiff's complaints of severe pain and the "benign looking MRI" of January 4, 2007 (Tr. 420); Plaintiff's lower back looks improved when comparing the MRI of January 14, 2005, to the January 4, 2007, MRI (Tr. 420); Plaintiff's pain is stable with pain medication (Tr. 406, 411, 416); questions the veracity of Plaintiff's complaints of pain in his hand, notes a lack of objective findings, and notes Plaintiff's "somewhat histrionic-type presentation" (Tr. 410); recounts a dispute with Plaintiff over Plaintiff's request for Valium and notes Plaintiff's "general drug-seeking profile" (Tr. 408); despite significant pain behavior, Plaintiff chose to use the stairs rather than waiting for the elevator (Tr. 407); notes Plaintiff "goes through a lot of pain behavior" and declined Plaintiff's request for additional pain medication because Plaintiff had recently obtained Oxycontin from the emergency room (Tr. 404); Vicodin "appears to be doing well for [Plaintiff, and he] is not experiencing any significant side effects from it" (Tr. 403); Plaintiff "is clearly acting like he is in significant pain.  I

always have a difficult time believing he is in as much pain as he likes to pretend" (Tr. 403); Plaintiff "has always been a complainer.  Nothing ever seems to be right for him" (Tr. 402); Plaintiff "is here today with his usual continuing complaints of back pain.  There has been really no increase. . . .  He usually has significant pain behaviors.  It is difficult to tell just how much of this is real" (Tr. 393).

The Court notes the record reflects a similar pattern developed during the treatment relationship between Plaintiff and Nurse Practitioner (N.P.) Debbie Reynolds.  A few months after she began treating Plaintiff in December 2003, N.P. Reynolds filled out disability forms for Plaintiff in March 2004.  Tr. 446-51.  As the relationship progressed, however, N.P. Reynolds began to doubt the veracity of Plaintiff's pain complaints.  For example, N.P. Reynolds's treatment notes reflect the following concerns:  despite significant plain complaints, Plaintiff "moves about freely . . . .  I have to question how much of this pain is real" (Tr. 442); Plaintiff again moves "quite fluently" despite complaints of severe pain (Tr. 441); notes she "had Dr. Balme review [Plaintiff's] MRI.  He has got apparently nothing of significance, although he does have a neurosurgery referral.  I suspect that he is malingering.  His exam is negative.  He had been in a vocational rehabilitation program and may be malingering due to this" (Tr. 441); and Plaintiff "is able to

walk without difficulty" (Tr. 436).

The records from other providers also substantiate the concerns noted by Dr. Olbrich and N.P. Reynolds.  For example, Plaintiff was treated on September 27, 2004, by Wendy Callander, M.D.  Tr. 429.  Dr. Callander notes Plaintiff requested Vicodin rather than the prescription N.P. Reynolds had provided. Tr. 429.  Dr. Callandar states Plaintiff was "very angry shaking a bottle of pills at me and stating 'the pills she gave me are not working.'"  Tr. 429.  Dr. Callander noted Plaintiff's stated medical history was inconsistent with N.P. Reynolds's treatment notes, and Plaintiff was "very evasive" about his back pain. Tr. 429.  Dr. Callander also noted she spoke with another physician, Dr. Brett, who did not agree Plaintiff needed chronic pain medications for his back "because of the minimal nature of his exam and his MRI."  Tr. 429.  Dr. Callander doubted Plaintiff would fill the non-opiate based medications she prescribed. Tr. 429.

Considering the record as a whole, including the additional medical records from Dr. Olbrich, the Court finds the ALJ's bases for assigning little weight to Dr. Olbrich's assessment of Plaintiff's functional capacity are supported by substantial evidence in the record.  The Court, therefore, concludes the ALJ provided legally sufficient reasons supported by substantial evidence in the record for discrediting the opinion of Dr.

Olbrich as to Plaintiff's functional capacity.

## II.  Plaintiff's Credibility.

Plaintiff contends the ALJ erred when he rejected Plaintiff's testimony with respect to the intensity, persistence, and limiting effects of his symptoms because the ALJ did not provide legally sufficient reasons for doing so.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton,* 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen,* 80 F.3d at 1284.  If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester,* 81 F.3d at 834)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra,* 481 F.3d at 750 (quoting *Lester,* 81 F.3d at 834).

The ALJ found Plaintiff's subjective symptom testimony
lacked credibility on the following grounds:  (1) Plaintiff's
treating physicians suspect he is malingering, (2) Plaintiff's
poor work history undermines his assertion that he is disabled,
(3) Plaintiff's statements are inconsistent regarding his use of
marijuana, (4) Plaintiff's failure to comply with treatment
undermines his complaints of disabling pain, and (5) Plaintiff's
activities of daily living belie his claims of disability.
Because there is affirmative evidence of malingering in the
record, the ALJ is relieved of the requirement to provide clear
and convincing reasons for discrediting Plaintiff's subjective
symptom testimony.  *See Carmickle v. Comm'r, Soc. Sec. Admin.,*
533 F.3d 1155, 1160 (9th Cir. 2008)("The only time [the clear and
convincing] standard does not apply is when there is affirmative
evidence that the claimant is malingering.").

The Court notes the ALJ in the prior decision found
Plaintiff was not credible with respect to his subjective symptom
testimony in light of Plaintiff's work history, inconsistent
statements, and the evidence of malingering.  Tr. 23-25.  That
portion of the ALJ's decision was upheld by Judge Panner in the
underlying action, case number 07-CV-900-CL, and was affirmed by
the Ninth Circuit on appeal.  Tr. 333-35, 346-59.  As noted,
however, the Ninth Circuit permitted the ALJ on remand to
reevaluate Plaintiff's credibility in light of additional records

22  -  OPINION AND ORDER

from Dr. Olbrich and the lay-witness testimony by Rhonda Esser.

As noted, N.P. Reynolds and treating physicians Drs. Callander and Olbrich each raised concerns that Plaintiff exaggerates his symptoms. Each expressed the belief that Plaintiff was magnifying his pain behavior either to obtain additional pain medication or to obtain some manner of public disability benefits. The Court has reviewed the entire record to assess the ALJ's determination that Plaintiff's subjective symptom testimony is not credible and already addressed the record with respect to Plaintiff's symptom magnification. On this record the Court concludes the additional medical records submitted by Dr. Olbrich constitute substantial evidence that supports the ALJ's credibility determination.

In addition, the new evidence in the record on remand does not undermine other legitimate bases offered by the ALJ for discrediting Plaintiff's subjective symptom testimony that were upheld in the prior action, such as Plaintiff's extreme lack of work history (earnings in five of the fourteen years prior to Plaintiff's alleged onset date). *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)(poor job history reflecting years of unemployment before alleged onset of disability is a clear and convincing reason to discredit the plaintiff).

Accordingly, the Court concludes on this record that the ALJ did not err in his evaluation of Plaintiff's credibility because

the ALJ gave legally sufficient reasons supported by substantial evidence in the record for discrediting Plaintiff's subjective symptom testimony.

**III.   Lay-Witness Testimony by Rhonda Esser.**

Plaintiff also contends the ALJ erred by failing to provide legally sufficient reasons for rejecting the testimony of lay-witness Rhonda Esser, Plaintiff's wife.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

Esser testified at the hearing before the ALJ on April 14, 2010.  Tr. 479-86.  She attested Plaintiff suffers from disabling pain; lays in bed most of the day; and has difficulty walking, gripping objects, and using stairs.  Tr. 479-84.  For example, Esser testified Plainitff takes ten minutes to walk up 12 to 13 stairs and requires significant rest after walking short distances.  Tr. 484.

The ALJ expressly considered the testimony by lay-witness Esser and gave her testimony little weight.  Tr. 326.  The ALJ

24  -  OPINION AND ORDER

gave the following bases for his rejection of Esser's testimony: (1) the limitations Esser described were inconsistent with Plaintiff's activities, (2) Esser's testimony was based on Plaintiff's subjective complaints, and (3) Esser's testimony is inconsistent with Dr. Olbrich's records.  Tr. 326.

The Court has concluded the ALJ properly discounted Plaintiff's credibility, particularly with respect to Plaintiff's statements concerning the severity, persistence, and limiting effects of his pain.  Thus, to the extent Esser's testimony is based on Plaintiff's subjective complaints of pain and his exaggerated pain behavior, Esser's observations are not helpful to the ALJ in determining Plaintiff's ability to perform work-related functions.

The ALJ also found Esser's testimony to be inconsistent with Dr. Olbrich's treatment notes.  In particular, Plaintiff's treating physician, Dr. Olbrich, repeatedly calls into question the credibility of Plaintiff's "pain behavior" as exaggerated. Dr. Olbrich noted on one occasion that despite Plaintiff's use of a cane and apparent difficulty ambulating, Plaintiff elected to use the stairs at his office rather than the elevator.  Tr. 407. Dr. Olbrich also stated on several occasions that Plaintiff reported his pain was adequately controlled with medication.  In addition, as noted, the treatment notes of N.P. Reynolds reflects Plaintiff moved freely during her examinations of Plaintiff

despite significant pain behavior.

Finally, Esser's description of Plaintiff as virtually unable to get out of bed or to climb even a flight of stairs is inconsistent with the record as a whole; for example, Esser testified Plaintiff travels to and from her apartment almost daily, which requires the routine use of the stairs.  Tr. 481-83. Plaintiff also drives a car and routinely travels to see physicians.  These activities are inconsistent with Esser's description of Plaintiff's extreme disability.

The Court, therefore, concludes on this record the ALJ provided reasons germane to Esser and supported by substantial evidence in the record for the weight he assigned to her testimony.

## IV.  Plaintiff's Leg-Length Discrepancy.

Plaintiff contends the ALJ erred by rejecting medical evidence that establishes Plaintiff has a significant leg-length discrepancy and by failing to include it as a severe impairment. Plaintiff contends his leg-length discrepancy causes his back problems and the ALJ failed to include the resulting limitations in Plaintiff's RFC.

Plaintiff testified before the ALJ on September 13, 2006, that "my one leg is longer than the other.  And that throws pain in my back too."   Tr. 330 (citation to the original administrative record in 07-CV-900-CL).  Plaintiff, however, did

not make any reference to his leg-length discrepancy in his
testimony before the ALJ on April 14, 2010.  Moreover, the record
contains limited treatment notes that reflect Plaintiff's left
leg is shorter than his right leg or that the leg-length
discrepancy is disabling.  *See* Tr. 257, 265, 407-08, 410.

A review of each of the related treatment notes in the
records reveals Plaintiff's leg-length discrepancy is a
contributing factor to Plaintiff's back pain.  Tr. 407.  In late
2007 and early 2008, Dr. Olbrich's treatment notes reflect that
when Dr. Hart, a neurosurgeon, examined Plaintiff and concluded
he was not a candidate for surgery, he recommended a leg brace to
resolve Plaintiff's leg-length discrepancy.  Tr. 407-08, 410.
None of Dr. Olbrich's treatment notes, however, state any
specific limitations resulting from Plaintiff's leg-length
discrepancy beyond those associated with pain in Plaintiff's
lower back.  In fact, the record reflects Plaintiff was fitted
with a brace late in 2007 to compensate for the discrepancy.
Tr. 408, 410.  After some adjustments were made to the brace in
March 2008, the record does not contain any additional references
to Plaintiff's leg-length discrepancy despite the fact that the
record includes almost two years of treatment notes from
Dr. Olbrich after that date.  Dr. Olbrich did not at any point in
his treatment of Plaintiff list his leg-length discrepancy as an
impairment or refer to it in his February 1, 2007, assessment of

Plaintiff's functional capacity.

Ultimately the ALJ concluded the impairment of Plaintiff's lumbar spine that resulted from Plaintiff's leg-length discrepancy is severe and found in his assessment of Plaintiff's RFC that Plaintiff is limited in standing, sitting, climbing, stooping, balancing, kneeling, etc., as a result.  Tr. 313-23. Plaintiff does not point to any evidence in the record that differentiates any limitations that result from Plaintiff's leg-length discrepancy from those that result from Plaintiff's impairments of his lumbar spine.

On this record the Court concludes there is not any basis to find that the ALJ erred at Step Two or Three by failing to include Plaintiff's leg-length discrepancy as a severe impairment or by failing to consider any resulting limitations.

**V.    Listed Impairments 1.04B and 11.04B.**

Plaintiff contends the ALJ erred by failing to find that Plaintiff's impairments meet or exceed the Listed Impairments 1.04B and 11.04B.  *See* 20 C.F.R. part 404, subpart P, appendix 1. Listing 1.04B is for "Spinal Arachnoiditis," and Plaintiff concedes "[t]here is no evidence in the record that the plaintiff has spinal arachnoiditis."  Listing 1.04B for spinal arachnoiditis must be "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful

dysesthesia."  The record does not reflect Plaintiff has had any
confirmation of spinal arachnoiditis nor symptoms of severe
burning or painful dysesthesia.  Similarly, although Plaintiff
contends he meets the Listing 11.04B for "[c]entral nervous
system vascular accident," he concedes there is not any evidence
that Plaintiff suffered a vascular accident.  Moreover, Listing
11.04B requires "[s]ignificant and persistent disorganization of
motor function in two extremities, resulting in sustained
disturbance of gross and dexterous movements, or gait and
station."  Thus, the Court concludes there is not any basis on
this record to find the ALJ erred when he did not find that
Plaintiff's impairments meet or exceed Listed Impairments 1.04B
or 11.04B.

Plaintiff, nevertheless, apparently contends his impairments
meet Listing 1.04 and 11.04 in some composite fashion based on

> the combination of his spinal impairment with
> nerve root compression, neuro-anatomic
> distribution of pain, dysesthesia, limitation
> of motion of the spine, motor loss (atrophy
> with associated muscle weakness or muscle
> weakness) accompanied by sensory or reflex
> loss clearly results in significant and
> persistent disorganization of motor function
> in his lower extremities and in the need to
> change position or posture more than once
> every two hours. The result is that he
> experiences sustained disturbance in his gait
> and station.

Although Plaintiff contends he suffers from each of the
above-listed symptoms, Plaintiff does not point to any medical

evidence in the record to substantiate such an array of symptoms.
The record reflects Plaintiff has had at least three MRI's of his
lower back.   Tr. 169, 289, 422-23.   Even though the MRIs showed
some evidence of effacement of the nerve root at L5-S1, none of
the examinations showed nerve root or spinal cord impingement.
Dr. Olbrich, in fact, determined a comparison of Plaintiff's 2005
and 2007 MRIs actually showed improvement in the disc bulges in
Plaintiff's lower back.   Tr. 420.   In addition, Plaintiff's
treating physicians have described his MRIs as "benign looking,"
resulting in insignificant or minimal findings.   Tr. 420, 429,
441.   As noted, Plaintiff was also evaluated by a neurologist who
determined Plaintiff was not a candidate for surgery.   Tr. 410.

Thus, although Plaintiff contends his degenerative disc
disease causes significant limitations on his ability to use his
legs and the record confirms Plaintiff has low-back pain with
some radiculopathy, Plaintiff's allegations of extreme disability
were properly discredited by the ALJ on the basis of the opinions
of Plaintiff's treating physicians and treating nurse
practitioner.   The Court, therefore, concludes Plaintiff has not
demonstrated he meets the standards for severity of symptoms
required under the Listings.

## VI.   Plaintiff's Depression and Anxiety.

Plaintiff contends the ALJ erred by finding Plaintiff's
depression and anxiety to be nonsevere without developing the

medical record further as to those impairments.

When determining whether Plaintiff has severe limitations resulting from depression and anxiety, the ALJ analyzed the record in accordance with 20 C.F.R. § 416.920(a) and Listing 12.00C in light of the Psychiatric Review Technique by Frank Lahman, Ph.D.  Tr. 228-39, 322-23.  Dr. Lahman concluded Plaintiff has a nonsevere anxiety-related disorder that does not limit Plaintiff's activities of daily living; social functioning; or ability to maintain concentration, persistence, and pace. Tr. 228-39.  Dr. Lanham also pointed out Plaintiff's nonsevere disorder has not resulted in any episodes of decompensation. Tr. 228-39.

The record reflects only two mentions of depression by Plaintiff's physicians:  On July 19, 2005, Plaintiff's then-treating physician, John Pieniazek, M.D., noted Plaintiff "seem[ed] slightly depressed secondary to his pain in both of his hands and as well as his back."  Tr. 279.  It does not appear that Dr. Pieniazek made any further reference to depression. Moreover, he did not diagnose Plaintiff with depression, did not treat Plaintiff in any way for depression, and did not recommend any further evaluation of Plaintiff's mental health.  In his February 1, 2007, assessment of Plaintiff's functional capacity, Dr. Olbrich noted Plaintiff suffers depression secondary to back problems.  Tr. 310.  As noted, Dr. Olbrich made clear in his

31  -  OPINION AND ORDER

treatment notes following his February 1, 2007, evaluation that
he doubted Plaintiff's presentation of symptoms.  As with
Dr. Pieniazak, it also does not appear Dr. Olbrich made any
further reference to depression, diagnosed Plaintiff with
depression, treated Plaintiff for depression, or recommended any
further assessment of Plaintiff's mental health.  In fact,
Dr. Olbrich repeatedly described Plaintiff as pleasant,
cooperative, and with clear cognition following his February 1,
2007, diagnosis.

On June 16, 2004, N.P. Reynolds mentioned Plaintiff
experienced anxiety and recommended treatment with acupuncture.
Tr. 438.  No further follow-up was provided, and, as noted, N.P.
Reynolds became increasingly suspicious of Plaintiff's
presentation after June 2004.

The record only reflects passing references to what appear
to be merely fleeting symptoms of depression and anxiety.
Moreover, Dr. Lahman reviewed the record and found Plaintiff does
not suffer any work-relevant mental limitations from his anxiety.
See 20 C.F.R. §416.920(d(1)("If we rate the degree of your
limitation in the first three functional areas as "none" or
"mild" and "none" in the fourth area, we will generally conclude
that your impairment(s) is not severe, unless the evidence
otherwise indicates that there is more than a minimal limitation
in your ability to do basic work activities.").  Thus, the Court

does not find any basis on this record to conclude the ALJ erred with respect to his finding of nonseverity as to Plaintiff's alleged mental impairments.

Nevertheless, Plaintiff also contends the ALJ had a duty to further develop the record regarding Plaintiff's mental impairments. The ALJ, however, relied on the review of the evidence by Dr. Lahman, and there is not any basis in this record to conclude the evidence is ambiguous or required further development. The record contains more than six years of consistent medical treatment of Plaintiff's impairments and three passing references to symptoms of depression and anxiety without further mention, treatment, or follow-up by Plaintiff's health-care providers. Accordingly, the Court concludes the ALJ was not required to develop the record any further as to Plaintiff's alleged mental impairments.

**VII. Plaintiff's RFC.**

Plaintiff also contends the ALJ erred when he assessed Plaintiff's RFC by failing to include all of Plaintiff's work-related mental limitations. Plaintiff concedes the Ninth Circuit upheld the previous ALJ's determination of Plaintiff's RFC. Nonetheless, Plaintiff argues the ALJ on remand erred in his assessment of Plaintiff's RFC by (1) failing to consider Dr. Olbrich's February 1, 2007, assessment that Plaintiff suffers side effects from his medication; (2) failing to include

limitations on Plaintiff's ability to maintain concentration, persistence, and pace, and (3) by stating that Plaintiff's ability to stand and walk is "unrestricted." *See* Tr. 323.

### A.  Medication Side Effects.

On the basis of Dr. Olbrich's February 1, 2007, assessment of Plaintiff's functional capacity in which Dr. Olbrich found Plaintiff suffers from drowsiness as a consequence of his pain medications, Plaintiff contends the ALJ erred when he failed to include that limitation in Plaintiff's RFC.

The Court has already determined the ALJ did not err when he discredited Dr. Olbrich's February 1, 2007, assessment of Plaintiff's functional capacity.  Specifically, Dr. Olbrich's treatment records contradict his earlier findings concerning the side effects of Plaintiff's pain medications:  For example, "[Plaintiff] has continued to do alright on Vicodin" (Tr. 420); Plaintiff "has no new pains and symptoms.  The medications appear to be holding him well so he really does not need any change in these" (Tr. 406); and Plaintiff "also needs routine refills for his low back syndrome, Vicodin ES #120.  It appears to be doing well for him.  He is not experiencing any significant side effects from it" (Tr. 403).  After his February 1, 2007, assessment, Dr. Olbrich did not note any complaints by Plaintiff about disabling side effects from his medication.

Accordingly, the Court concludes the ALJ's decision not to

include limitations based on the side effects of Plaintiff's medication is supported by substantial evidence in the record.

**B.   Concentration, Persistence, and Pace.**

Plaintiff also contends the ALJ erred by failing to include in Plaintiff's RFC the limitations on Plaintiff's concentration, persistence, and pace due to exacerbations of Plaintiff's back pain. The previous ALJ limited Plaintiff to simple, repetitive work "[d]ue to distractions of pain and the possible side effects of medication," and that determination was upheld by the Ninth Circuit on appeal. *See* tr. 23. As noted, here the ALJ assessed a similar limitation to simple repetitive work and found Plaintiff is able to "understand, remember, and carry out short, simple instructions and perform routine tasks." Tr. 323. Plaintiff, however, contends, on the basis of Dr. Olbrich's February 1, 2007, assessment, that he has work-related mental limitations that must be included in his RFC.

The Court has already determined the ALJ did not err when he decided not to give Dr. Olbrich's assessment controlling weight, and the Court found the ALJ properly relied on Dr. Lahman's opinion that Plaintiff does not have difficulties maintaining concentration, persistence, or pace. *See* Tr. 238. Moreover, none of Dr. Olbrich's records reflect complaints about concentration, persistence, or pace. Dr. Olbrich's records, in fact, reflect Plaintiff attended classes to learn about his

diabetes and was doing well in those classes.   Tr. 418-19.

Moreover, when the ALJ asked Plaintiff at the hearing "So do you

think you can focus on a job?", Plaintiff testified "It depends,

yeah, I could.  If I had to, yes."  Tr. 469.  Plaintiff also

testified shifting positions would not distract his focus.

Tr. 470.  For example, Plaintiff said he could perform the duties

of a culinary job if he could stand long enough.  Tr. 471.

Plaintiff also testified he, in fact, had a part-time job that he

was able to concentrate on in which he makes telephone calls to

authorize checks.  Tr. 470-71.

   Accordingly, the Court concludes the ALJ's decision not to

include additional limitations on Plaintiff's concentration,

persistence, or pace is supported by substantial evidence in the

record.

**C.    "Unrestricted" Ability to Stand and Walk.**

   Plaintiff also contends the ALJ erred in his assessment of

Plaintiff's RFC when he stated Plaintiff's ability to stand and

to walk is "unrestricted."  *See* Tr. 323.  Plaintiff contends the

ALJ's assessment of Plaintiff's RFC is contradictory because the

ALJ used the word unrestricted to describe Plaintiff's ability to

stand and to walk, but then limited Plaintiff's ability to sit or

to stand to approximately 45 minutes at one time.

   The previous ALJ assessed Plaintiff's ability to stand and

to walk as "unrestricted," and the previous ALJ's assessment of

Plaintiff's RFC was expressly upheld by the Ninth Circuit.
Tr. 23.  Thus, to the extent that Plaintiff contends there is
some facial inconsistency in the language the ALJ used to assess
Plaintiff's RFC, the Court is not persuaded.

The Court notes even though the ALJ on remand found
Plaintiff's ability to stand and to walk is unrestricted, he
concluded Plaintiff has postural limitations that limited his
ability to climb, to stoop, to balance, to kneel, to crouch, to
crawl, and also noted Plaintiff must be able to shift between
sitting and standing at will approximately every 45 minutes.
Tr. 323.  Thus, the ALJ found Plaintiff has an unrestricted
*ability* to stand and to walk, but he can only exercise that
ability for a certain length of time.

Finally, to the extent that Plaintiff contends he has
additional restrictions on his ability to stand and to walk on
the basis of new evidence in the record from Dr. Olbrich, the
Court has already upheld the ALJ's determination that
Dr. Olbrich's February 1, 2007, assessment is undermined by his
subsequent treatment notes.  Although Plaintiff cites numerous
treatment records noting Plaintiff presented with a limp at his
physical-therapy examinations and appointments with N.P.
Reynolds, none of those records suggest Plaintiff is more
functionally limited than the ALJ concluded in his RFC.

Accordingly, the Court concludes the ALJ's assessment of

37  -  OPINION AND ORDER

Plaintiff's RFC is supported by substantial evidence in the record.

**VIII.  The ALJ's Burden at Step Five.**

Finally, Plaintiff contends the ALJ's hypothetical to the VE was in error because it did not contain all of Plaintiff's work-related limitations.  Having concluded the ALJ did not err in his assessment of Plaintiff's RFC, the Court finds Plaintiff does not identify any legitimate basis for finding the ALJ's hypothetical to the VE was erroneous.

In summary, the Court has reviewed the record in its entirety with respect to each of Plaintiff's contentions that the ALJ erred and concludes the ALJ has provided legally sufficient reasons for his decision that are supported by substantial evidence in the record.  Accordingly, the Court affirms the decision of the Commissioner.


<u>**CONCLUSION**</u>

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this ___ day of October, 2011.


ANNA J. BROWN
United States District Judge


38  -  OPINION AND ORDER